UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| KAREN A. PULKKINEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  09-CV-99-P-H |
| ) | |
| FAIRPOINT COMMUNICATIONS, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDED DECISION ON MOTION
FOR JUDGMENT ON THE PLEADINGS**

The Defendants[1] in this employment discrimination case request that the Court enter judgment on the pleadings based on their assertion that "the factual underpinnings of the claims" have already "been fully and fairly adjudicated in . . . two prior arbitrations" in which Plaintiff Karen Pulkkinen's interests were "adequately represented" by her union, which "hired a highly respected attorney with twenty-five years of experience in labor and employment law to do just that." (Mot. for J. at 1, Doc. No. 41.)  Ms. Pulkkinen, responding *pro se*, argues that she is entitled to a hearing in this Court and that the factual findings below do not have preclusive force because they were based on a fact-finding investigation conducted at the employer's behest and interviewees were not sworn and because she was not afforded an opportunity to cross examine the witnesses against her.  (Pl.'s Opposition, Doc. No. 42; see also Pl.'s Opp'n to Obj. to Sch.

---

[1] The motion was originally filed by both defendants. (Doc. No. 41).  However, before the motion was decided Fairpoint filed a Suggestion of Bankruptcy (Doc. No. 43) and the matter was stayed as to both parties.  The court has now severed the claims against Verizon (Doc. No. 48) and at the telephone conference I held with the parties, Verizon requested the previously filed motion be decided before a scheduling order issued.  I agreed.

Order, Doc. No.11.)  The Court referred this matter for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For reasons that follow, I recommend that the Court deny the motion.

## THE STANDARD AND THE RECORD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  To determine whether to grant judgment for the moving party, the court must "accept all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in [its] favor."  Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998).  So read, judgment on the pleadings should only enter if the complaint fails to raise a plausible entitlement to relief.  Citibank Global Mkts., Inc. v. Santana, 573 F.3d 17, 23 (1st Cir. 2009).  "The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  However, "[t]here is no resolution of contested facts in connection with a Rule 12(c) motion:  a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." Id.

Defendant Verizon wishes the Court to enter judgment based on three documents that were introduced to the record in connection with Fairpoint's earlier objection to the Court's scheduling order.  (Doc. No. 10.)  Those documents are:

> (1) a December 11, 2006, Report of Investigation of Allegations of Harassment, authored by Attorney Amy M. Homans following an investigation she conducted at the behest of Verizon New England in which Attorney Homans found that Pulkkinen was the harasser and not the harassee (Doc. No. 10-1);
>
> (2) an arbitration award executed in September and October of 2008 concluding that employment actions imposed against Pulkkinen in January 2007 (including suspension and transfer), based on the Homans Report, did not violate the

>collective bargaining agreement between Pulkkinen's union and FairPoint Communications, as successor to Verizon (Doc. No. 10-2); and

>(3) a January 5, 2009, unexecuted, draft arbitration decision addressed to the issue of whether FairPoint had good cause to terminate Pulkkinen's employment, in which the arbitration panel concluded (in draft) that the decisions to discontinue Pulkkinen's medical leave benefits and to terminate her employment for failure to return to work were supported by just cause. (Doc. No. 10-3.)

Although there is no reference to any of these documents or proceedings in Pulkkinen's original complaint or in her amended complaint, the Defendants assert that the Court may take judicial notice of these documents and the records generated at the prior proceedings. (Mot. for J. at 7.) The Defendants do not brief exactly how the documents or the findings contained in them can be judicially noticed by the Court. Nor have they introduced the documents through an authenticating affidavit. On the other hand, Pulkkinen (*pro se*) does not deny that the documents are authentic.

The Defendants have not introduced the collective bargaining agreement, but the second arbitration award (the unexecuted draft award) contains a reference to certain arbitration provisions.

>Article G9    Arbitration

>G9.03 (a) If the grievance involves a discharge or disciplinary action, the Board of Arbitration shall determine whether the discharge or disciplinary action was for just cause. If the Board of Arbitration finds that the discharge or disciplinary action was without just cause, the employee shall be reinstated ...

>(b) If such grievance concerns any other determination of the Company involving the exercise of discretion, such determination shall not be set aside by the Board of Arbitration unless it shall find it to have been made arbitrarily or in bad faith.

The second arbitration award also references arbitration provisions related to disability pay and medical determinations. It calls for an expedited grievance of contested decisions by the

company's medical director.  This process can conclude through an arbitration proceeding involving a neutral arbitrator who participates in a "Board of Arbitration" review alongside a company and a union representative.  The hearing is governed by Article G9.  If the Board of Arbitration sides with the company's medical director, "any *personnel action* based on the Director's determination shall be final and binding."  (Doc. No. 10-3 at 3-4 (emphasis added).)  The Defendant's motion does not contain any reference to these provisions of the collective bargaining agreement.  There is no information about whether or not Pulkkinen's collective bargaining agreement contained a provision requiring that claims of *statutory discrimination* must be submitted to arbitration.

## THE ALLEGATIONS

Karen Pulkkinen brings her civil action pursuant to the Americans with Disabilities Act, the Maine Human Rights Act, and the Maine Whistleblower Protection Act.  She alleges that she was employed by both defendants from 1989 through June 2007.  According to her amended complaint, she was assigned to work as an Outside Plant Technician at the Defendants' Lewiston office and met or exceeded legitimate performance expectations during her tenure.  In 2002, Pulkkinen began to voice complaints about alleged harassment by a male co-worker named Dean Celani in the form of verbal insults, taunts, threats, physical contact, defacement of personal property and acts of intimidation.  According to Pulkkinen, the Defendants failed to take prompt remedial action and, instead, suspended her and transferred her to another work location.  Thereafter, Pulkkinen took a medical leave of absence for anxiety and depression and was subsequently terminated in June 2007.  (Am. Compl. ¶¶ 7-16.)  She alleges in three counts (1) discrimination on the basis of sex, (2) hostile work environment, and (3) retaliation.  All three

counts are asserted under the Americans with Disabilities Act, the Maine Human Rights Act, and the Maine Whistleblower Protection Act. (Id. ¶¶ 17-35 & "wherefore" clause.)

According to the amended complaint, Ms. Pulkkinen filed a charge of discrimination with the Maine Human Rights Commission in July 2007, prior to the first arbitration award, and received her right to sue letter in December 2008, between the two arbitration awards. (Am. Compl. ¶¶ 5, 6.)

## DISCUSSION

The Defendant's motion is premised on the doctrine of collateral estoppel. Verizon contends that the case "presents squarely the question of whether a private litigant in an EEO case should be permitted to relitigate facts found against her Union in a prior labor arbitration." (Mot. for J. at 7.) They characterize the factual issues that have already been resolved as: (1) "whether it was Pulkkinen and not Celani who was the harasser"; (2) "whether Pulkkinen was properly suspended and transferred based upon her harassment of Celani"; and (3) "whether [Pulkkinen] was properly terminated because of her refusal to report to work." (Id. at 8.) According to the Defendants, these issues have all been conclusively resolved through arbitration, where it was determined "that Pulkkinen lied about Celani in an effort to get him fired, and that Pulkkinen was suspended, transferred, and terminated for proper reasons[.]" (Id.)

Successful invocation of the doctrine of collateral estoppel requires:

(1) that the issue to be precluded is the same as that disputed in a prior proceeding, (2) that the issue was actually litigated in the earlier proceeding, (3) that the issue was determined by a valid and binding final judgment or order, and (4) that the determination of the issue in the prior proceeding was essential to the final judgment or order.

Plumley v. S. Container, 303 F.3d 364, 373 (1st Cir. 2002). As a general proposition: "Final arbitral awards are entitled to the same preclusive effect as state court judgments, at least as

concerns claims and issues actually raised." Wolf v. Gruntal & Co., 45 F.3d 524, 528 (1st Cir. 1995).

In Wolf, the First Circuit addressed the doctrine of res judicata rather than collateral estoppel and concluding that res judicata could not be applied because the federal claim at issue was not contractually subject to arbitration or voluntarily submitted for arbitration and, therefore, the arbitral forum lacked jurisdiction to issue an award with preclusive effect. Id. Somewhat similarly, in Plumley, the First Circuit considered a collateral estoppel assertion and held that an arbitral award could not be considered a binding final judgment with preclusive effect against a statutory (Family Medical Leave Act) claim when the union did not have authority under the collective bargaining agreement to arbitrate for the employee regarding statutory rights. 303 F.3d at 373-74. Although the Plumley decision assumed that such statutory claims "cannot be consigned to the grievance procedures created under collective bargaining agreements", id., an assumption that has now been rejected by the Supreme Court, 14 Penn Plaza, LLC v. Pyett, 129 S. Ct. 1456, 1465 (2009), the Plumley decision still has precedential value because the Defendants in this case have failed to demonstrate that Pulkkinen's statutory claims were clearly and unmistakably subject to arbitration under the collective bargaining agreement between her union and the Defendants. According to the Plumley Court, statutory claims that are not subject to arbitration cannot be precluded by arbitral awards on union grievance proceedings because "an arbitration proceeding undertaken pursuant to the CBA cannot yield a final judgment or order binding . . . on that issue" under the "third element of the collateral estoppel test." 303 F.3d at 374 (alluding to the minority rights that individual union members enjoy that cannot be

compromised by the will of the union majority).[2] The Defendants argue that this holding is no longer tenable in light of the Supreme Court's recent resolution of an issue left unresolved prior to Plumley.

Prior to the Plumley decision, in Wright v. Universal Maritime Service Corporation, 525 U.S. 70 (1998), the Supreme Court addressed the tension set up by its labor arbitration precedents, most notably Alexander v. Gardner-Denver Company, 415 U.S. 36 (1974), and Gilmer v. Interstate/Johnson Lane Corporation, 500 U.S. 20 (1991). In Gardner-Denver, the Supreme Court had held that a union member is not barred from pursuing a civil action for an alleged Title VII violation simply because the union pursued his claim as a grievance under a collective bargaining agreement containing a non-discrimination clause. 415 U.S. at 49. In Gilmer, on the other hand, the Supreme Court held that an individual employee who executed a mandatory arbitration provision in which he agreed to arbitrate any dispute, including one arising out of the termination of employment, could be compelled to arbitrate a claim under the Age Discrimination in Employment Act because that Act does not contain language indicating congressional intent to preclude arbitration, which would otherwise be appropriate under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. 500 U.S. at 23-27.

In Wright, the Supreme Court considered the tension created by these precedents in the context of a claim by a union member who wished to pursue a claim under the Americans with Disabilities Act in federal court without first pursuing the claim as a grievance under a collective bargaining agreement that called for all disputes (including matters affecting the terms and conditions of employment) to be referred to an internal grievance process that, if deadlocked,

---

[2] In a non-union context, the First Circuit has recognized that statutory claims can be the subject of pre-dispute, mandatory arbitration agreements executed by an employee on her own behalf. Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc., 170 F.3d 1 (1st Cir. 1999) (Title VII and the Age Discrimination in Employment Act); Bercovitch v. Baldwin Sch., 133 F.3d 141, 150 (1st Cir. 1998) (ADA).

would result in the dispute being referred to an arbitrator.  525 U.S. at 72-73.  However, the Supreme Court concluded that it did not have to resolve whether the union could negotiate a valid waiver of its members' statutory claims in the collective bargaining process because the agreement itself did not expressly call for statutory claims (as opposed to disputes over the terms of the collective bargaining agreement) to be arbitrated and the member's cause of action did not arise out of the contract, but out of the ADA.  Id. at 76-79.  Under these circumstances, the Supreme Court held that the lower court could not dismiss the civil action based on a presumption that the underlying dispute was subject to mandatory arbitration.  Id. at 79.  The Supreme Court also observed that, to be enforceable as a waiver of the judicial forum, the arbitration language in the collective bargaining agreement "must be clear and unmistakable."  Id. at 80 ("[W]hether or not Gardner-Denver's seemingly absolute prohibition of union waiver of employees' federal forum rights survives Gilmer, Gardner-Denver at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA.").

In 14 Penn Plaza, the Supreme Court concluded that it could resolve the tension it left unresolved in Wright.  Specifically, it held that the plaintiffs' union had the bargaining authority to waive its members' right to pursue federal statutory claims in a judicial forum and that the union did so because the collective bargaining agreement required union members "to submit all claims of employment discrimination to binding arbitration," expressly including claims under Title VII, the ADA, and the ADEA, and expressly stating that arbitration is "the sole and exclusive remedy for violations."  14 Penn Plaza, 129 S. Ct. at 1461 (5-4 decision); see also id. at 1465 ("Nothing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative.  This Court has

required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective bargaining agreement.") (quoting Wright, 525 U.S. at 80).  Given an express and unequivocal waiver of access to a judicial forum, the Supreme Court held that the waiver could only be disregarded if the federal statute in question precluded arbitration of claims arising from the statute's provisions.  Id. at 1465.

      Although 14 Penn Plaza removes an obstacle to the enforcement of mandatory arbitration clauses in collective bargaining agreements, its application to this case is uncertain because the Defendants have not properly introduced the collective bargaining agreement.  Assuming for the sake of argument that the Article G9 and the related medical review provisions referenced in the second arbitration decision constitute the only material portions of the collective bargaining agreement, 14 Penn Plaza still does not resolve the issue because that language has not even been briefed by the Defendants in relation to the clear and unmistakable waiver standard.  It is not the Court's task to analyze that language independently.  Moreover, one reading of these provisions is to the effect that an employee-adverse arbitration decision is simply meant to result in a final employment decision.  There is otherwise no language clearly and unmistakably referencing statutory claims or expressly waiving access to a judicial forum in connection with such claims.  On this record, in my view, Plumley determines the collateral estoppel question because the arbitration proceedings cannot be accorded final and preclusive effect under the third element of the collateral estoppel test unless the collective bargaining agreement clearly and unmistakably assigns statutory claims to arbitration.  303 F.3d at 374.  In effect, I am reading the rule of Plumley to apply in the wake of 14 Penn Plaza because the Defendants have not demonstrated that Pulkkinen's union entered into a clear and unmistakable waiver with respect to statutory

9

claims.³  For this reason, I recommend that the Court deny the motion for judgment on the pleadings.

## CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court DENY the Defendant's Motion for Judgment on the Pleadings (Doc. No. 41).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

February 23, 2010

---

3   It would seem appropriate to follow Plumley cautiously and leave it for the First Circuit to consider the impact that 14 Penn Plaza has with respect to Plumley's consideration of the collateral estoppel question.  Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349-50 (1st Cir. 2004).
   On another note, the Defendants do not assert that the arbitrations were binding based on Ms. Pulkkinen's own voluntary relinquishment of her right to pursue her statutory claims in a judicial forum.  Compare Mathews v. Denver Newspaper Agency LLP, No. 07-CV-02097-WDM-KLM, 2009 WL 1231776, *6, 2009 U.S. Dist. Lexis 37697, *15 (D. Colo. May 4, 2009) (granting summary judgment to defendant where "Plaintiff voluntarily decided to submit his discrimination and retaliation claims to *binding* arbitration [and] thus gave up his right to pursue his claims in a judicial forum"); with St. Aubin v. Unilever HPC NA, No. 09 C 1874, 2009 WL 1871679, *4, 2009 U.S. Dist. Lexis 55626, *10-11 (N.D. Ill. June 26, 2009) (rejecting at the dismissal stage the defendant's contention that plaintiff's submission of claim to arbitration was a binding agreement to arbitrate).